IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| WILLIAM DAVIDSON HAMBY, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:12-cv-01239 |
| ) | |
| VALERIE McCULLOUGH, ) | Judge Trauger |
| SHERIFF DARON HALL, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

Plaintiff William Davidson Hamby, Jr. is presently detained at the Davidson County Sheriff's Office – Criminal Justice Center. He has filed a complaint under 42 U.S.C. § 1983 against defendants Valerie McCullough and Sheriff Daron Hall, alleging violations of his constitutional rights. The complaint is before the court for an initial review pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a).

**I.    Factual Allegations in the Complaint**

In his complaint, the plaintiff alleges that defendant McCullough has, as a matter of practice and policy, repeatedly "violated the 'attorney/client right to privacy/confidentiality" by monitoring his telephone calls with his attorney. (ECF No. 1, at 2.) More specifically, the plaintiff alleges that the phone that he is permitted to use to speak with his attorney is directly across from the desk where McCullough sits, and that McCullough listens to his conversations with his attorney, and sometimes places the call on speaker-phone. The plaintiff states that there is no sign posted to say that attorney calls are monitored at all times, but he is obviously aware that they are physically monitored. The plaintiff claims that McCullough's listening to his private conversations with his attorney violates his rights and jeopardizes his pending criminal cases. He alleges that she takes statements by the plaintiff to his attorney out of context, causing him "further damage." (ECF No. 1, at 2.) As "proof" that McCullough and other officers listen to his telephone calls with his attorney, the plaintiff attaches as Exhibit A to his complaint a Jail Incident Report that indicates that McCullough and two corrections officers overheard the plaintiff tell his attorney, while he was ending a call, "I can't do too much time I'll just kill myself, for real. I'm 42 years old and I can't do too much time. I cut myself and got about 8 staples the other day." (ECF No. 1, at 6.) As a result of the officers' overhearing these statements by the

plaintiff to his attorney, the plaintiff was placed on level two suicide watch. The plaintiff wrote on this document: "Proof my calls to attorney are listened to by Valerie McCullough (Case Manager) as the only attorney calls allowed are in front of her, with the speaker phone on also. Proof she spread what I said to attorney." (*Id.*)

The plaintiff alleges that Sheriff Daron Hall is also liable to him for McCullough's actions because he is her boss and because he "ignor[es] her violations," refuses to allow an internal affairs investigation, and will not correct the problem, and   (ECF No. 1, at 3.)

The plaintiff further alleges: "McCullough also denies me any and all access to law library as well." (ECF No. 1, at 4.)

The plaintiff alleges that the defendants' actions "harm the potential success and/or outcome" of his criminal cases, and he sues the defendants in both their individual and official capacities. He seeks injunctive relief as well as compensatory damages.

## II.     Standard of Review

Under 28 U.S.C. § 1915(e)(2)(B), the court must dismiss a civil complaint or any portion of a complaint filed *in forma pauperis* that (1) fails to state a claim for which relief can be granted, or (2) is frivolous. Section 1915A(a) similarly requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." The Sixth Circuit has confirmed that the dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), "governs dismissals for failure to state a claim under those statutes  because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive scrutiny on initial review, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).

Although *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with *pro se* complaints does not require us to conjure up unpled allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

**III. Discussion**

To state a claim under § 1983, a plaintiff must (1) show the deprivation of a right secured by federal law or the United States Constitution, and (2) demonstrate that the deprivation was caused by a person acting under color of state law. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327, 330 (1986)); *West v. Atkins*, 487 U.S. 42, 48 (1988); *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992). Both parts of this test must be satisfied to support a claim under § 1983. *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991). The plaintiff does not identify what rights he believes have been violated by McCullough's monitoring of his telephone calls with his attorney, but the Court presumes he intends to state a claim under the First Amendment based on the burdening of his communications with his attorney and/or under the Sixth Amendment for interference with his right to the effective assistance of counsel.

Under the Sixth Amendment, "inmates must have a reasonable opportunity to seek and receive the assistance of attorneys," and "[r]egulations and practices that unjustifiably obstruct the availability of professional representation or other aspects of the right of access to the courts are invalid." *Procunier v. Martinez*, 416 U.S. 396, 419 (1974). However, to prevail on a § 1983 claim for a violation of the Sixth Amendment, plaintiff must establish (1) an intrusion into an attorney-client communication and (2) some prejudice to him. *Weatherford v. Bursey*, 429 U.S. 545, 558 (1977).

In the plaintiff's case, he has offered nothing to suggest that the actions complained of have resulted in prejudice to his right to the effective assistance of counsel such as the disclosure of his defense strategy to the federal prosecutors involved in his federal criminal proceedings or that it has resulted in any tainted evidence in those proceedings. *See id.* (undercover officer's participation in a meeting between a defendant and his lawyer did not violate Sixth Amendment because the evidence was not tainted, the defense plan was not revealed to the prosecution, and the intrusion was not purposeful). Absent some kind of claimed interference with his relationship with his attorney or prejudice to his defense, the plaintiff fails to state a §

1983 claim for an infringement of his Sixth Amendment right. *Cf. Stanley v. Vining*, 602 F.3d 767, 770–71 (6th Cir. 2010) (holding that, where there was no contention that the defendant's questioned actions created a barrier to the inmate's relationship with his lawyer, there is no cognizable Sixth Amendment claim for deprivation of the right to counsel) (citing *Wolff v. McDonnell*, 418 U.S. 539, 576–77 (1974) for its holding that "[a]s to the Sixth Amendment, its reach is only to protect the attorney-client relationship from intrusion in the criminal setting").

The next question is whether the plaintiff states a colorable claim under the First Amendment. The Sixth Circuit has recognized that prison inmates retain the right under the First Amendment to communicate with family and friends, as well as attorneys, and that "reasonable access" to the telephone is likewise protected by the First Amendment. *See Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir. 1994); *see* id. at 1100 ("[T]here is no legitimate governmental purpose to be attained by not allowing reasonable access to the telephone, and . . . such use is protected by the First Amendment." (citation omitted)); see *also Muhammed v. Pitcher*, 35 F.3d 1081, 1984–85 (6th Cir. 1994) (recognizing that prisoners' First Amendment rights are implicated by regulations governing their receipt of mail generally and legal mail specifically). In other words, a prison may constitutionally limit the nature and extent of a prisoner's access to the telephone, so long as the restrictions are rationally or reasonably related to legitimate penological interests. At this point it is unclear whether the defendants' practice or policy of monitoring attorney-client telephone calls is reasonably related to legitimate penological interests. The Court therefore finds that the plaintiff's claim under the First Amendment should not be dismissed at this time.

The Court notes that the plaintiff sues both defendants in their individual and official capacities. The plaintiff clearly states a claim against defendant McCullough in her individual capacity insofar as the allegations in the complaint concern actions taken directly by her that the plaintiff claims violated his constitutional rights. However, insofar as the plaintiff seeks to sue Sheriff Daron Hall in his individual capacity as well, the claim fails, because the plaintiff fails to show that Sheriff Hall was personally involved in the alleged monitoring of the plaintiff's telephone calls with his attorneys. In addition, the fact that Sheriff Hall is McCullough's "boss" is not sufficient to impose liability on him. *See, e.g., Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978) (holding that *respondeat superior* liability is not available under § 1983); *Lee v. Mich. Parole Bd.*, 104 F. App's 490, 493 (6th Cir. 2004) ("Section 1983 liability may not be

imposed simply because a defendant denied an administrative grievance or failed to act based upon information contained in a grievance.").

The plaintiff also states that he intends to name Sheriff Hall in his official capacity. Offical-capacity suits are, for all intents and purposes, treated as suits against the municipality the official represents. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). The official-capacity suit against Sheriff Hall is therefore against the Metropolitan Government of Nashville and Davidson County ("Metro"). The Court finds that the complaint adequately states a claim against Sheriff Hall in his official capacity based upon allegations that the monitoring of inmates' telephone calls with their attorneys is an institution-wide policy, implemented or instituted by Sheriff Hall as agent for Metro.

Because the court finds that the complaint adequately asserts claims against both defendants based on the alleged violation of the plaintiff's constitutional rights, his claims will at this stage be permitted to proceed. An appropriate order will enter.

_____
Aleta A. Trauger
United States District Judge